**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JEFFERSON SCHOOLHOUSE | ) | |
| PROPERTIES, LLC, | ) | |
| Plaintiff | ) | C.A. No. 20-210 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| BEN WEITSMAN & SON OF | ) | |
| JAMESTOWN, LLC, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

    **A.     Relevant Procedural History**

Plaintiff, Jefferson Schoolhouse Properties, LLC, a Pennsylvania limited liability

company, initiated this action on July 24, 2020, by filing a complaint against Defendant Ben

Weitsman & Son of Jamestown, LLC, a New York limited liability company ("Weitsman"), and

three other entities related to Weitsman. Plaintiff subsequently filed an amended complaint on

July 30, 2021, against Weitsman only [ECF No. 29], and the other three related entities have

since been dismissed from this case by stipulation of the parties [ECF No. 38].

This action arises out of the theft of various materials from a building Plaintiff owns in

Warren, Pennsylvania, known as the Jefferson Schoolhouse ("the Schoolhouse"). The theft was

committed by a third party, James Walinski ("Walinski"), who was hired as a contractor by

Plaintiff to perform certain renovations to the Schoolhouse. Plaintiff alleges that Walinski sold

the stolen materials to Weitsman as scrap metal over a period of several month and is now

seeking to recover damages from Weitsman for purchasing the stolen materials. Plaintiff's

claims against Weitsman are asserted in four counts: Count I – conversion; Count II – negligence *per se* for violation of Pennsylvania's Scrap Metal Theft Prevention Act, 73 Pa. C.S. § 1943; Count III (in the alternative) - negligence *per se* for violation of New York's scrap dealing laws; and Count IV – concerted tortious conduct under §§ 875-876 of the Restatement (Second) of Torts.

After the parties completed discovery in this case, Weitsman filed a motion for summary judgment [ECF No. 31], seeking judgment in its favor as a matter of law on Counts II, III and IV of the amended complaint, and on Count I to the extent any purported conversion occurred prior to July 24, 2018, beyond the reach of the applicable statute of limitations. Weitsman also seeks to limit Plaintiff's request for damages under Count I. Plaintiff has filed its own partial motion for summary judgment [ECF No. 35], seeking summary judgment as to the question of liability under Counts I and IV. Both motions have since been fully briefed by the parties and are now ripe for disposition.

### B.   Relevant Factual History[1]

In or around the Fall of 2017, Plaintiff hired Walinski to renovate one or two classrooms in the Schoolhouse into model or prototype apartments (ECF No. 36, at ¶ 2). During the time Walinski was renovating the classrooms, he removed from the Schoolhouse, without permission, approximately 20 radiators, which he later cut up and sold as scrap metal (ECF No. 33, at ¶ 24). Walinski also removed copper piping from beneath the floors of the Schoolhouse and sold it as scrap (Id. at ¶ 25). Through a series of approximately 35 separate transactions that took place between November 13, 2017 and March 19, 2019, Walinski sold all of the scrap metal he took

---

[1] The factual history set forth herein has been gleaned from the parties' concise statements of material facts [ECF Nos. 33, 36], but only to the extent such facts are unopposed and/or amply supported by the evidence of record.

from the Schoolhouse to Weitsman, a New York licensed scrap processor located in Jamestown, New York (ECF No. 36, at ¶ 8; ECF No. 33 at ¶¶ 2-3, 26). Walinski had never sold scrap to Weitsman before November 2017 (Id. at ¶ 29). Walinski submitted his driver's license to Weitsman on his first visit, which was then kept on file (ECF No. 33, at ¶ 31). According to Walinski, Weitsman never asked him if he was the owner of the materials he sold to them, nor was he asked where the materials came from (ECF No. 36, at ¶¶ 10-11). A Customer Audit report produced by Weitsman indicates that Walinski was paid a total of $ 6,353.92 for the scrap metal (Id. at ¶ 55).

On March 21, 2019, Thomas Pellegrino ("Pellegrino"), a member and owner of Plaintiff, reported to the City of Warren Police that Walinski had stolen 21 radiators and lengths of copper pipe from the Schoolhouse (ECF No. 33, at ¶ 39). Plaintiff also alleges that several water fountains were removed (Id. at ¶ 41). Walinski was arrested on March 22, 2019 and ultimately pleaded guilty to theft by unlawful taking, a third degree felony, on August 15, 2019 (Id. at ¶¶ 42-43). He was sentenced to serve a prison term of 21 to 84 months and was ordered to pay restitution in the amount of $140,000.00 (Id. at ¶ 44).

## II.   DISCUSSION

### A.   Choice of Law Analysis

Because the alleged activity in this case occurred in both Pennsylvania and New York, a choice of law analysis is required to determine which state's law applies to each of the various causes of action. When faced with a potential conflict of law issue, a federal court sitting in diversity must apply the forum state's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); see also Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am., 693 F.3d 417, 432 (3d Cir. 2012). Pennsylvania uses a "hybrid" choice of law approach that

combines the "governmental interest analysis" with the Second Restatement of Conflict's "most significant relationship" test. Panthera Rail Car LLC v. Kasgro Rail Corporation, 985 F. Supp. 2d 677, 696 (W.D. Pa. 2013) (internal citations omitted). This approach requires the court to first determine whether there is a relevant difference between the law of the jurisdictions whose laws potentially apply, i.e., whether there is an actual conflict. Id. See also Hammersmith v. TIG Ins. Co., 480 F.3d 220, 231 (3d Cir. 2007); Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964).

If the laws of the jurisdictions are the same, "then there is no conflict at all, and a choice of law analysis is unnecessary." Panthera, 985 F.Supp.2d at 696 (citations omitted). In the absence of a conflict, "the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply." Id. (internal citations omitted). If the laws differ, then the court must examine the interests and policies underlying the law of each jurisdiction and determine whether the conflict is "true," "false," or "unprovided for." Id.; see also Hammersmith, 480 F.3d at 229-31.

A deeper choice of law analysis is required only if both jurisdictions' interests are impaired by the application of the other's laws (i.e., if a "true" conflict exists). Panthera, 985 F.Supp.2d at 696. A true conflict exists when the governmental interests of both jurisdictions would be impaired if their law were not applied. Budget Rent-A-Car Sys. v. Chappell, 407 F.3d 166, 170 (3d Cir. 2005); Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 n. 15 (3rd Cir. 1991); Taylor v. Mooney Aircraft Corp., 265 Fed. Appx. 87, 91 (3d Cir. 2008). If a true conflict exists, then the court must determine which state has the greater interest in the application of its law by weighing each state's contacts on a qualitative scale according to the policies and interests underlying the particular issue. Panthera, 985 F.Supp.2d at 696; Hammersmith, 480 F.3d at 231.

4

This qualitative analysis is done pursuant to the Restatement (Second) of Conflict of Laws, and evaluates which state has the most significant relationship to this matter. The relevant contacts are set forth in Section 145(2)(a)–(d) of the Restatement, and include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Stillwagon v. Insbrook Golf & Marina, LLC, 2013 WL 1180312, at *7 (W.D. Pa. March 20, 2013), citing Taylor, 265 Fed. Appx. at 91; see also Kelly v. Ford Motor Co., 933 F. Supp. 465, 468 (E.D. Pa. 1996). The analysis is more than a mere counting of the contacts. It includes a weighing of the contacts on a qualitative scale according to the policies and interests underlying the particular issue. Taylor, 265 Fed Appx. at 91; Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 463 (3d Cir. 2006).

Both parties agree that there is no conflict of law as to Plaintiff's conversion claim; however, there is considerable disagreement regarding the choice of law to be applied to Plaintiff's claims of negligence *per se* and concerted tortious conduct. So, the choice of law for each of these claims will be analyzed in turn.

### 1.      Counts II and III – Negligence *per se*

Plaintiff has asserted alternative counts of negligence *per se* based upon Weitsman's alleged violation of Pennsylvania's Scrap Metal Theft Prevention Act, 73 Pa. C.S. § 1943, on the one hand, or New York's scrap processor law[2] on the other. Thus, the choice of law issue

---

[2] Though Plaintiff's claim alleges that Weitsman is a junk dealer and, thus, applies N.Y. Gen. Bus. Law. §62, the record makes clear that Weitsman is a licensed scrap processor under New York law, thus making N.Y. Gen. Bus. Law. §§ 69-E through 69-H the applicable law in New York.

regarding the claim of negligence *per se* revolves around which state's statutory law should apply.

Under Pennsylvania law, a scrap processor is required to obtain the seller's signature on a receipt that must include a certification that the seller is the owner or authorized seller of the scrap material. 73 P.S. § 1943.3(b). There is no equivalent certification requirement under New York law, which merely requires the scrap processor to maintain records that show: 1) the date of purchase, 2) the seller's name, 3) the seller's address, 4) the seller's driver's license information, 5) the type and quantity of the purchase, and 6) the seller's signature. Thus, a true conflict exists between the duties applied to scrap processors under Pennsylvania and New York law which necessitates a qualitative analysis under Pennsylvania's choice of law rules, in accordance with Section 145 of the Restatement (Second) of Conflict of Laws.

The first contact Pennsylvania examines is the place where the injury occurred. Because the injury in this case is pecuniary in nature, the injury is deemed to have occurred at Plaintiff's business location in Pennsylvania under Pennsylvania's choice of law rules. See Panthera Rail Car, LLC v. Kasgro Rail Corp., 2013 WL 4500468, at *12 (W.D. Pa. Aug. 21, 2013), citing CAT Internet Servs., Inc. v. Magazines.com, Inc., 2001 WL 8858, at *4 (E.D. Pa. Jan. 4, 2001) (citation omitted) ("Federal courts applying Pennsylvania choice of law rules have recognized that where the injury is pecuniary in nature, the plaintiff's principal place of business is generally considered the place of injury and represents a contact of substantial significance").

The second contact to be considered is the place where the conduct causing the injury occurred. In this regard, Plaintiff argues that the injury was caused in Pennsylvania, where the original theft of its property took place, because Weitsman's conversion is predicated upon the initial tort in Pennsylvania. In making this argument, Plaintiff emphasizes the actions of

Walinski, who is not a party to this action. Moreover, the ultimate injury at issue here is not the injury caused by Walinski, but the injury allegedly caused by Weitsman in violating the specific duties imposed by applicable statutory law. In this case, all alleged actions taken by Weitsman occurred in New York. While the original theft of the materials by Walinski occurred in Pennsylvania, no representative of Weitsman travelled to Pennsylvania or conducted any business with Walinski there. Thus, Weitsman's conduct causing the injury occurred in New York.

The third contact considered by Pennsylvania courts is the "domicile, residence, nationality, and place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 145(c). Again, Plaintiff's attempt to include Walinski in the consideration of this factor is misguided, as the factor expressly applies to "the parties." As the parties are incorporated and located in opposing states, this factor is neutral.

Finally, the fourth contact, regarding the relationship between the parties, does not apply since Plaintiff and Weitsman have no direct relationship arising out of the facts of this case.

Based on the foregoing analysis, the Court concludes that New York's interest in applying its own statutory laws to the conduct of scrap processors licensed in its own state outweighs the interest of Pennsylvania in applying its scrap processing laws to redress the wrongs committed against businesses formed and located in its own state. In making this conclusion, the Court finds that the second factor is the central focus of Plaintiff's claim and weighs more heavily in favor of New York's policies and interests in regulating its own licensed scrap processors doing business within its own state. This is true despite Plaintiff's argument that application of New York's less restrictive scrap processing law would violate Pennsylvania's public policy interest in preventing scrap metal theft by requiring more stringent documentation.

7

In effect, as Weitsman notes, Plaintiff is arguing that "because Pennsylvania law imposes a higher burden on a scrap processor, it should apply to Weitsman in New York as a matter of public policy" (ECF No. 45, at p. 2). However, to subject a foreign company to the statutory requirements of a state in which that company does not do business simply because a resident of that state chooses to do business with the company would be wholly unreasonable. To do so would require the foreign company to be aware of and be bound by the laws of all states from which customers may come to do business, while making sure that it also adheres to the laws of the state in which it is licensed. Such an anomaly has been rejected by the courts. Cipolla v. Shaposka, 439 Pa. 563, 267 A.2d 854, 856-857 (Pa. 1970) ("Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's law just because a visitor from a state offering higher protection decides to visit there."); Shuder v. McDonald's Corp., 859 F.2d 266, 272 (3d Cir. 1988).

As a result, the Court finds that New York law applies to Plaintiff's negligence *per se* claim, and summary judgment will be entered in favor of Weitsman and against Plaintiff on the alternative negligence *per se* claim at Count II, based on Pennsylvania law.

## 2.   Count IV - Concerted Tortious Action

Pennsylvania has adopted Section 876 of the Restatement (Second) of Torts regarding concerted tortious action, also known as civil aiding and abetting. Sovereign Bank v. Ganter, 914 A.2d 415, 421 (Pa. Super. 2006). Under that section, "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result

and his own conduct, separately considered, constitutes a breach of duty to the third person."

Plaintiff asserts that there is no true conflict between Pennsylvania and New York law governing concerted tortious action because New York, like Pennsylvania, has adopted Section 876 of the Restatement (Second) of Torts. In support of this position, however, Plaintiff cites several New York trial court decisions that are not binding on this Court (ECF No. 43, at p. 13). See Gruber v. Owens-Illinois, Inc., 899 F.2d 1366, 1369 (3d Cir. 1990) ("[E]ven in diversity cases this Court has … held that while the decrees of 'lower state courts' should be 'attributed some weight ... the decision [is] not controlling ….'") (citations omitted). In contrast, Defendant has cited a number of New York appellate division cases that are more controlling, which consistently hold that, under New York law, "[a]iding and abetting conversion requires the existence of a conversion by the primary tortfeasor, actual knowledge, and substantial assistance." William Doyle Galleries, Inc. v. Stettner, 167 A.D.3d 501, 505, 91 N.Y.S.3d 13, 18 (App. Div. 1st Dept. 2018); Sh575 Holdings LLC v. Reliable Abstract Co., 195 A.D.3d 429, 431, 149 N.Y.S.3d 62, 64 (App. Div. 1st Dept. 2021) (affirming dismissal of claim for failure to plead defendant had knowledge of underlying tort); Dickinson v Igoni, 76 AD3d 943, 945, 908 N.Y.S.2d 85 (App. Div. 2d Dept 2010); Weisman, Celler, Spett & Modlin v Chadbourne & Parke, 271 AD2d 329, 330, 706 NYS2d 414 (App. Div. 1st Dept 2000), leave denied 95 NY2d 760, 737 NE2d 952, 714 NYS2d 710 (N.Y. 2000)).

Significantly, New York courts recognize that "[a]llegations of constructive knowledge, or that defendant was on notice as to the tortious behavior of the wrongdoer, are not legally sufficient to sustain a cause of action" for aiding and abetting. Rizer v. Breen, 2007 N.Y. Misc. LEXIS 801, at *20 (Sup. Ct. Jan. 29, 2007) citing Kaufman v. Cohen, 307 AD2d 113, 125, 760 N.Y.S.2d 157 (App. Div. 1st Dept 2003); Kolbeck v. LIT America, Inc., 939 F. Supp. 240, 246

(SDNY 1996). Thus, the critical difference between Pennsylvania and New York law is that Pennsylvania allows for liability for civil aiding and abetting without direct knowledge of the other party's tortious conduct, while New York requires that the defendant have knowledge of the underlying tort in order to establish liability. This difference creates a true conflict because New York law requires definitive proof of the knowledge element, whereas Pennsylvania law, under certain circumstances, does not.

Since the laws of Pennsylvania and New York differ in the elements of this tort in a significant respect, a true conflict exists and a qualitative analysis renders the same result as it did with Plaintiff's negligence *per se* claim. In short, New York has a strong interest in applying its law to businesses that not only operate in New York, but are licensed pursuant to New York statutory law. Applying Pennsylvania law to a defendant's conduct that took place entirely in New York imposes an unfair burden on the defendant to acquaint itself and then comply with laws of any state from which it could conceivably receive business. Thus, the balance of interests weighs in favor of applying New York law to Plaintiff's concerted tortious action claim. As a result, Plaintiff's motion for summary judgment as to this claim, which is based upon application of Pennsylvania law, will be denied.

### B.   Application of Law to the Merits

#### 1.   Count I – Conversion

##### a.   Liability

Plaintiff has moved for summary judgment on its claim of conversion against Weitsman, as to liability only. Under Pennsylvania law, conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." McKeeman v. Corestates Bank,

N.A., 751 A.2d 655, 659 n. 3 (Pa. Super. 2000). Similarly, New York recognizes that the "[t]wo

key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2)

defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."

Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 50, 827 N.Y.S.2d 96, 860

N.E.2d 713 (2006) (internal citations omitted).

 Although the exercise of control over the chattel must be intentional, the tort of

conversion does not rest on proof of specific intent to commit a wrong. McKeeman, 751 A.2d at

659 n. 3. A good faith purchaser of goods from a converter is also a converter and must answer

in damages to the true owner. Underhill Coal Min. Co. v. Hixon, 652 A.2d 343, 345 (Pa. Super.

1994). The general rule for chattels is that a "bona fide purchaser from a thief gets nothing." Id.

at 346. This is the case because a converter has no title to chattels, and thus can convey nothing

to a bona fide purchaser for value. Hranec Sheet Metal, Inc. v. Metalico Pittsburgh, Inc., 107

A.3d 114 (Pa. Super. 2014). Therefore, all that is necessary to establish a claim of conversion is

proof that the Defendant purchased stolen property. Id. at 119; cf., Baran v. Weitsman's Scrap

Yard, 47 Misc. 3d 512, 2 N.Y.S. 3d 877 (Sur. Ct, New York County 2015), citing Spraights v.

Hawley, 39 N.Y. 441 (1868) ("It is irrelevant that the defendant acted in good faith or in

ignorance of the plaintiff's interest in the property").

 Here, it is clear that Walinski was not the owner of the scrap metal that he removed from

the Schoolhouse and sold to Weitsman over a period of sixteen months. By his own admission,

he was a thief. Because Walinski stole the materials at issue, he did not possess good legal title to

the property that he could pass onto a subsequent purchaser. So, by purchasing the stolen

materials from Walinski, Weitsman became a converter as a matter of law, regardless of whether

it acted in good faith or had no reason to believe that Walinski was not the true owner of the materials.

Nonetheless, Weitsman counters that Plaintiff has failed to establish its claim of conversion as a matter of law because it has not specifically identified the items that were allegedly converted (ECF No. 39, at p. 10, citing Meese v. Miller, 79 A.D. 237, 242-243, 436 N.Y.S.2d 496, 500 (4th Dept. 1981) (noting that a conversion claim must establish, *inter alia*, that "the defendant converted a specifically identified property"). However, Weitsman's assertion that there remain genuine issues of material fact as to the specific identity of the converted items is belied by the record evidence.

Notably, in its response to Weitsman's concise statement of material facts, Plaintiff denies that it failed to provide a list of every item it alleges was stolen by Walinski, adding that "Pellegrino provided a list of items stolen by Walinski to the police and said list is located within the police report" (ECF No. 44, at ¶ 51). Indeed, Weitsman has acknowledged that Pellegrino reported to the City of Warren Police that Walinski had stolen 21 radiators and lengths of copper pipe from the Schoolhouse (ECF No. 33, at ¶ 39), a fact further verified by Walinski, who has testified that he stole "roughly 20" radiators from the Schoolhouse, along with copper piping that was under the floor (ECF No. 36-4, at p. 13). Walinski has also testified that he cut up all of the materials he stole from the Schoolhouse and sold them as scrap to Weitsman (Id. at pp. 12-15), a fact that Weitsman does not dispute (ECF No. 33, at ¶ 26). The record also contains Weitsman's full Customer Audit Report for all 35 transactions that occurred between Walinski and Weitsman from November 13, 2017 to March 19, 2019 [ECF No. 34-6]. This report identifies the date of each transaction, along with the type, quantity, and price of the metal that was purchased from Walinski. (Id.; ECF No. 33, at ¶ 57). Based on the foregoing, there can be no legitimate dispute

12

regarding the specific identity and nature of the property subject to Plaintiff's conversion claim against Weitsman.

Because Plaintiff has satisfied the elements of its conversion claim as a matter of law, summary judgment will be granted in favor of Plaintiff and against Weitsman on Count I of the complaint, as to liability only.

**b.**   **Limitations on Recovery**

Notwithstanding the foregoing, Weitsman seeks to limit Plaintiff's recovery on its conversion claim by requesting summary judgment as to (1) the amount of damages Plaintiff may recover on its claim, and (2) the number of transactions that may be included as part of the claim based on the application of the relevant statute of limitations.

**i.**   **Damages**

Weitsman asserts that Plaintiff's recovery on its conversion claim is limited to the fair market value of the property at issue. This is consistent with both Pennsylvania and New York law. More accurately stated, "[t]he measure of damages for common law conversion is the market value of the converted property at the time and place of conversion." See Bank of Landisburg v. Burruss, 524 A.2d 896, 902 (Pa. Super. 1987); Fantis Foods, Inc. v. Standard Importing Co., Inc., 49 N.Y.2d 317, 326 (1980). Thus, to the extent it is necessary to place a limit on Plaintiff's claim for damages, the Court will grant Weitsman's request for summary judgment limiting Plaintiff's potential recovery on its conversion claim to the fair market value of the converted property at the time and place of conversion, which amount remains in dispute.

**ii.**   **Statute of Limitations**

Weitsman argues further that Plaintiff's conversion is limited by the statute of limitations. Both parties agree that the applicable statute of limitations is two years, based upon the law of

13

Pennsylvania, as the forum state. Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, rehearing denied 326 U.S. 806 (1945). Thus, Weitsman asserts that the statute bars Plaintiff's conversion claim to the extent it relates to any transaction that occurred prior to July 24, 2018 (two years from the date of suit). Plaintiff counters that Walinski's theft of the materials at issue was not discovered by Pellegrino until March 2019 and, therefore, its conversion claim, as a whole, is timely.

In Pennsylvania, a statute of limitations generally begins to run "when an injury is inflicted." Wilson v. El-Daief, 964 A.2d 354, 361 (Pa. 2009). But "where the plaintiff's injury or its cause was neither known nor reasonably ascertainable," the "discovery rule" tolls the statute of limitations. Nicolaou v. Martin, 195 A.3d 880, 892 (Pa. 2018); Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005). The parties acknowledge that the discovery rule may be applied to conversion cases in Pennsylvania. See e.g. Younkin v. Beener, 227 A.3d 445 (Pa. Super. Ct. 2020) (unpublished). Under the Pennsylvania discovery rule, the "commencement of the limitations period is grounded on 'inquiry notice' that is tied to 'actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice to the full extent of the injury, the fact of actual negligence, or precise cause.'" Gleason v. Borough of Moosic, 15 A.3d 479, 484 (Pa. 2011), quoting Wilson, 964 A.2d at 364. The statute of limitations accordingly begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another. See Coleman v. Wyeth Pharms., 6 A.3d 502, 510-11 (Pa. Super. 2010). A plaintiff bears the burden of showing reasonable diligence. Nicolaou, 195 A.3d at 893. Where "'reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, . . . the discovery rule does not apply

14

as a matter of law.'" <u>Adams v. Zimmer US, Inc.</u>, 943 F.3d 159, 164 (3d Cir. 2019) (citation omitted).

Here, Weitsman contends that Plaintiff failed to exercise reasonable diligence to discover whether any items were missing at the Schoolhouse for almost two years (ECF No. 32, at p. 23). In particular, Weitsman asserts that "[t]he failure to inspect the Schoolhouse in such a way as to reasonably discover the removal of over two dozen large, noticeable metal items strains credulity and falls far below the bar imposed by the law for reasonable conduct to discover a tort" (<u>Id</u>. at p. 24). On the other hand, Pellegrino declares that, when he made visits to the Schoolhouse during the time Walinski was performing renovations, he "would inspect the work that Walinski was supposed to be doing" and "had no need to tour or inspect the rest of the building, because I had no reason to expect that Walinski was doing anything in those other areas." (ECF No. 44-1, Declaration of Tom Pellegrino, at ¶¶ 18-20). In addition, Pellegrino declares that Walinski "took steps to conceal his actions," explaining that radiators in the Schoolhouse had sheet metal covers that obscured them from view and that "Walinski would take off these covers, remove the radiators and associated copper piping, and then replace the covers," thus concealing their removal from the casual observer, as indicated in photographs included with the police reports. (<u>Id</u>. at ¶¶ 21-23). According to Pellegrino, Walinski also "placed large sheets of plywood in front of the alcoves" in which some the radiators were located, further obscuring them from view. (<u>Id</u>. at ¶ 24).

Based on the foregoing, it is apparent that genuine issues of material fact remain as to whether Plaintiff exercised reasonable diligence to discover Walinski's theft of its property, which cannot be resolved on summary judgment. As a result, Defendant's motion to limit Plaintiff's conversion claim based upon application of Pennsylvania' statute of limitations will

be denied, without prejudice to Weitsman's right to raise this issue at trial, if deemed appropriate.

## 2.    Count III – Negligence *per se* Under New York Law

As previously discussed, Plaintiff's negligence *per se* is properly governed by New York law under Pennsylvania' choice of law rules. Thus, to establish a claim of negligence *per se*, Plaintiff must prove that Weitsman violated a state statute that imposes a specific duty, and that the violation was a proximate cause of injury to Plaintiff. Dance v. Town of Southampton, 95 A.D.2d 442, 445, 467 N.Y.S.2d 203 (2d Dept. 1983). Because Weitsman is a licensed scrap processor under New York law, the applicable statute to be considered is New York's scrap processor law codified at N.Y. Gen. Bus. Law §§ 69-E through 69-H.

In order to comply with New York's scrap processor law, Weitsman is required to maintain records that show: 1) the date of purchase, 2) name of seller, 3) seller's address, 4) driver's license information, 5) type and quantity of the purchase, and 6) the signature of the seller. N.Y. Gen. Bus. Law § 69-G. Weitsman must keep these records for three years, and a copy of the seller's driver's license for two years. Based on the documents produced in this case, Weitsman not only met, but exceeded these statutory requirements. Weitsman has produced a complete record of all transactions with Walinski which includes the date, Walinski's name, and the items purchased, and the amount paid. (ECF No. 33, at ¶¶ 54-58). In addition, individual transactions have records which includes a copy of Walinski's driver's license and photos of the items purchased by Weitsman. (Id. at ¶¶59-60). These photos are not required by the statute, but evidence the items as they were presented to Weitsman, i.e. as scrap. None of these facts are disputed by Plaintiff and no evidence exists that Weitsman failed to comply with its statutory

requirements under New York law. Thus, summary judgment will be entered in favor of Weitsman and against Plaintiff on this claim.

### 3. Count IV – Concerted Tortious Action under New York Law

Under New York law, a plaintiff states a claim for concerted tortious action (aiding and abetting) upon alleging facts sufficient to support an inference of "(1) the existence of a[n underlying tort]; (2) *[the] defendant's knowledge of the [underlying tort]*; and (3) that the defendant provided substantial assistance to advance the [underlying tort's] commission." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006) (emphasis added). So, in this case, Weitsman is required to have had knowledge of the underlying tort in order to be liable for concerted tortious conduct; however, no evidence exists in the record to support  the conclusion that Weitsman, or any of its employees, had any knowledge of Walinski's tortious conduct.

To the contrary, Walinski testified that he never sold scrap to Weitsman prior to 2017, did not know any employees or managers at Weitsman, and dealt with different employees on almost every transaction. (ECF No. 33, at ¶¶ 29-30). In addition, Walinski did not disclose to any Weitsman employee or manager where the scrap came from or that he took it unlawfully. (Id. at ¶ 35). Plaintiff's attempts to establish constructive knowledge on the part of Weitsman are unavailing. Rizer, 2007 N.Y. Misc. LEXIS 801, at *20 ("[a]llegations of constructive knowledge, or that defendant was on  notice as to the tortious behavior of the wrongdoer, are not legally sufficient to sustain a cause of action"); see also William Doyle Galleries v. Stettner, 167 A.D.3d 501, 505, N.Y.S.3d 13, 18 (App. Div. 1st Dept. 2018) (holding "actual knowledge" is required).

Because Weitsman cannot be held liable for aiding and abetting Walinski in the commission of a tort absent direct knowledge, summary judgment will be granted in favor of Weitsman and against Plaintiff on this claim.

An appropriate Order follows.